UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 11-14345-Civ-SCOLA

STEVEN BARNETT, *et al.*,

    Plaintiffs,
vs.

W. CHRISTOPHER BLANE, *et al.*,

    Defendants.
_____/

### ORDER ON MOTIONS TO DISMISS

THIS MATTER is before the Court on Defendant W. Chris Blane's Motion to Dismiss (ECF No. 74), and Hans Eric Vogel's Motion to Dismiss (ECF No. 75). For the reasons explained in this Order, Blane's Motion to Dismiss is granted in part, and denied in part. Vogel's Motion to Dismiss is denied.

### I. BACKGROUND

This case involves allegations of a series of complicated fraudulent schemes perpetrated by Defendant W. Christopher Blane. The Plaintiff, Steven Barnett, alleges that beginning in 2004 Blane convinced him to invest millions of dollars into several corporate ventures to fund businesses ranging from a boat-making company to a corporation that owned and controlled several patents related to a product used to repair manhole covers and pumping stations. The allegations reveal three schemes allegedly orchestrated by Blane: (1) the Worldspan Marine Scheme, (2) the Capital Span Scheme, and (2) the Poly-Triplex Scheme.

Regarding the Worldspan Marine Scheme, Barnett alleges Blane stole money from Barnett that was designated to be invested in Worldspan Marine by depositing it in Blane's wife's bank account. Barnett further alleges that other portions of Barnett's Worldspan Marine investments were invested in Worldspan Marine, but fraudulently credited as investments by Blane and not Barnett. Finally, Barnett alleges that while Blane promised to match all investments into Worldspan Marine made by Barnett, Blane failed to do so. Regarding the Capital Span Scheme, Barnett alleges that Blane failed to match all investments made by Barnett, as promised. Regarding the Poly-Triplex Scheme, Barnett alleges that Blane failed to match all

investments made by Barnett, as promised. Barnett also alleges that Blane violated securities laws with respect to this last Scheme.

## II. LEGAL STANDARDS

When considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must accept all of the Complaint's allegations as true, construing them in the light most favorable to the plaintiff. *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008). A pleading need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The plaintiff must therefore articulate "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Thus, a pleading that offers mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" will not survive dismissal. *See Twombly*, 550 U.S. at 555. "Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 679.

Where a cause of action alleges fraud, Federal Rule of Civil Procedure 9(b) must be satisfied in addition to the more relaxed standard of Rule 8. Under Rule 9(b), "a party must state with particularity the circumstances constituting fraud or mistake," although "conditions of a person's mind," such as malice, intent, and knowledge, may be alleged generally. Fed. R. Civ. P. 9(b). "The 'particularity' requirement serves an important purpose in fraud actions by alerting defendants to the precise misconduct with which they are charged and protecting defendants against spurious charges of immoral and fraudulent behavior." *W. Coast Roofing & Waterproofing, Inc. v. Johns Manville, Inc.*, 287 F. App'x 81, 86 (11th Cir. 2008) (citations omitted).

### III. ANALYSIS

A. Counts XXI and XXIX:  Violation of the Florida Securities and Investor Protection Act, Florida Statute Section 517.301 (Barnett Against Blane).

Since Barnett has not alleged that he has sold the securities at issue, he may only proceed on his claim for recission of the stock; his claim for damages will be dismissed.  Counts XXI and XXIX are both brought under the Florida Securities and Investor Act (Florida Statutes Sections 517.011 – 517.32).  Barnett alleges that Blane made numerous misrepresentations in order to induce Barnett to purchase shares of stock in Poly-Triplex Technology (PTT).  (Am. Compl. ¶ 317, ECF No. 72.)  Count XXI seeks damages in connection with the stock sale.  Count XXIX seeks recission of the stock sale.  Blane argues these claims should be dismissed because they fail to meet the heightened pleading requirement of Federal Rule 9(b).  Blane also argues that Barnett cannot maintain both claims because the remedies (*i.e.*, damages or recission) are mutually exclusive.

A cause of action under the Florida Securities and Investor Protection Act must allege and establish the following elements: (1) a material misrepresentation, (2) made with scienter or reckless disregard as to the truth of the communication, (3) that was justifiably relied upon, (4) in connection with a purchase or sale of securities; and (5) that the misrepresentation was the direct proximate cause of the loss.  *Compania de Elaborados de Cafe v. Cardinal Capital Mgmt., Inc.*, 401 F. Supp. 2d 1270, 1280 (S.D. Fla. 2003) (Altonaga, J.).  Florida Statute Section 517.211 provides for remedies in the form of either recission of the securities sale or damages suffered – but not both.  Fla. Stat. § 517.211; *Fallani v. Am. Water Corp.*, 574 F. Supp. 81, 84 (S.D. Fla. 1983) (Gonzalez, J.).  A Florida-Securities-and-Investor-Protection-Act claim must be pleaded with heightened specificity because it is essentially a claim for fraud.  *See Arnold v. McFall*, 839 F. Supp. 2d 1281, 1286 (S.D. Fla. 2011) (Middlebrooks, J.).  In a claim for recission a plaintiff need not show any causal connection between the misrepresentation and his damages, in fact, a plaintiff need not even alleged that he has been damaged.  *E. F. Hutton & Co., Inc. v. Rousseff*, 537 So. 2d 978, 981 (Fla. 1989).

Barnett has alleged that in early 2009, at their shared office in Vero Beach, Florida, Barnett and Blane had a conversation about the PTT stock sale.  (Compl. ¶¶ 227-28, 321-22.)  At that time, Blane purportedly knowingly made the following false statements to Barnett: (1) at any time Instituform, Inc. would purchase PTT for at least $10 million, (2) Blane would match Barnett's investments in PTT, and (3) Barnett would receive a fixed rate of return for his

investment in PTT.  (*Id.* ¶¶ 228-29, 322-23.)  Based on these statements, Barnett made a series of investments in PTT between February 2009 and June 2009.  (*Id.* ¶¶ 231, 324-25.)  Barnett further alleges that Blane knew that these three statements were false because at the time he made the statements Blane knew: (1) Instituform had no intention of purchasing PTT and certainly had no intention of purchasing PTT for a minimum of $10,000,000; (2) Blane would never match on a dollar-for-dollar basis the investments made by Barnett into PTT;  (3) Barnett would not receive a fixed rate of return on the principal amount paid by Barnett to purchase the securities. (*Id.* ¶¶ 229, 323.)

Based on these allegations, Barnett has adequately pleaded a cause of action under the Florida Securities and Investor Protection Act.  Barnett has alleged what statements he contends were fraudulent, who made them, where and when they were made, and how they were purportedly false.  Barnett's claim for damages, however, fails because he has not alleged that he sold the investments and that he suffered any loss.  On this point, Barnett's claim of damages is conclusory and would otherwise fail the Rule 9(b) specificity requirement.  Barnett's count for recission may go forward because actual damages are not even an element of this claim.  Accordingly, Count XXI is dismissed without prejudice, and Count XXIX remains.

- B. <u>Count XXII:  Violation of Rule 10b-5 of the Securities Exchange Act of 1934 (Barnett Against Blane as to Poly-Triplex Technologies, Inc. Investments).</u>

This claim will be dismissed because Barnett has not sufficiently alleged an economic loss.  Barnett has alleged that Blane violated Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated under that Act, 17 C.F.R. § 240.10b-5.  Identical to the allegations in the Florida-Securities-and-Investor-Protection-Act claim, Barnett asserts that in early 2009, at their shared office in Vero Beach, Florida, Barnett and Blane had a conversation about the Poly-Triplex Technologies, Inc. stock sale. (Compl. ¶¶ 238-39.)  At that time, Blane purportedly knowingly made the following false statements to Barnett: (1) at any time Instituform, Inc. would purchase Poly-Triplex Technologies for at least $10 million, (2) Blane would match Barnett's investments in PTT, and (3) Barnett would receive a fixed rate of return for his investment in Poly-Triplex Technologies.  (*Id.* ¶¶ 239-40.)  Based on these statements, Barnett made a series of investments in Poly-Triplex Technologies between February 2009 and June 2009.  (*Id.* ¶¶ 242.)  Blane argues that the Rule 10b-5 claims fail to satisfy the heightened pleading requirement.  Specifically, Blane takes issue with the allegations regarding

the Barnett's alleged damages, and how the purportedly fraudulent statements caused Barnett's damages.

"In order to state a cause of action under [Section] 10(b) and Rule 10b-5, a plaintiff must allege: (1) a misstatement or omission (2) of a material fact (3) made with scienter, (4) on which the plaintiff relied (5) that proximately caused the plaintiff's injury." *In re Sahlen & Assocs., Inc. Sec. Litig.*, 773 F. Supp. 342, 351 (S.D. Fla. 1991) (Hoeveler, J.). "To satisfy the causation element of a Rule 10b-5 cause of action, the plaintiff must prove both actual causation, or 'transaction causation,' and proximate causation, or 'loss causation.'"[1] *Bruschi v. Brown*, 876 F.2d 1526, 1530 (11th Cir. 1989). A plaintiff pursuing a Rule-10b-5 claim must have actually suffered an economic loss caused by the plaintiff's fraudulent statements. *See* 15 U.S.C. § 78u-4 (requiring that the plaintiff prove that the the defendant's wrongful act caused the loss that the plaintiff seeks to recover for). A Rule-10b-5 claim must satisfy the heightened pleading requirements of Federal Rule of Civil Procedure 9(b). *See In re Sahlen & Assocs., Inc. Sec. Litig.*, 773 F. Supp. at 352.

Barnett alleges that he has been "monetarily damaged in that he did not receive a fixed rate of return on the securities he purchased." (Am. Compl. ¶ 245.) This allegation does not actually indicate whether Barnett suffered an actual loss. Even if Blane misrepresented that the Poly-Triplex Technologies securities would produce a fixed rate of return, if Barnett's actual rate of return, variable as it may have been, was higher than the promised fixed rate of return then Barnett would not have suffered any loss. Taking all of Barnett's allegations as true, he fails to state a claim against Barnett for the sale of the Poly-Triplex Technologies securities. This claim will be dismissed without prejudice.

C. Count XXIII: Violation of Rule 10b-5 (Barnett Against Blane as to Eyewonder Investments).

Count XXVII suffers from the same insufficiencies as Count XXII, discussed in the preceding Section of this Order, and will likewise be dismissed. In this Count, Barnett alleges that Blane knowingly made several material misstatements regarding the sale of stock in Eyewonder, Inc. at a meeting in Vero Beach, Florida in October 2006. (Am. Compl. ¶ 251.)

---

[1] Transaction causation is where the defendant's statements caused the plaintiff to make the investment. *In re Sahlen & Assocs., Inc. Sec. Litig.*, 773 F. Supp. 342, 351 (S.D. Fla. 1991) (Hoeveler, J.). "To establish loss causation, however, the plaintiff must prove not only that, had he known the truth, he would not have acted, but in addition that the untruth was in some reasonably direct, or proximate, way responsible for his loss. *Id.* (quotation omitted).

Specifically, Blane is purported to have stated that the amount Barnett would pay for the stock was the same as Blane had paid for he shares, and that the sale complied with all Securities and Exchange Commission regulations. (*Id.* ¶ 251.) Barnett concludes that he has been "monetarily damaged due to his purchase of share of stock in Eyewonder." (*Id.* ¶ 257.)

This claim fails to adequately allege that Barnett has suffered any actual loss. For example, it is not possible to discern whether Barnett paid more for the stock than its true value or not. Barnett's damages allegation is completely conclusory. It fails to assert with the required specificity how Barnett was damaged. The claim also fails to adequately allege causation. Barnett fails to plead any connection between Blane's misrepresentations and any economic losses. For these reasons this claim will be dismissed without prejudice.[2]

 D. Count XXIV:  Civil Theft (Barnett against Blane).

Barnett has adequately pleaded a claim for civil theft. Under Florida Law, a cause of action for civil theft must allege the statutory elements of theft, as well as criminal intent. *Gersh v. Cofman*, 769 So. 2d 407, 409 (Fla. Dist. Ct. App. 2000) (citing Fla. Stat. § 772.11 (1997)). Theft is defined as knowingly using another person's property with the intent to deprive the true owner of a right to the property or to wrongly appropriate the property from the true owner. Fla. Stat. § 812.014 (2012).

Barnett has alleged that through a series of detailed transactions, Blane stole $239,500 from him between April 2006 and March 2007. (Am. Compl. ¶¶ 260-61.) Blane purportedly accomplished this theft, in part, by wrongly attributing some of Barnett's contributions to Worldspan Marine as being from Blane. (*Id.*) Blane also allegedly simply stole other sums of money that Barnett had designated for investment in Worldspan Marine. (*Id.*) These allegations adequately plead facts sufficient to state a claim for civil theft against Blane. This claim will not be dismissed.

---

[2] The Court has also considered Blane's argument that this claim is time-barred because it does not relate-back to Barnett's initial Complaint. This argument necessarily involves a determination of whether the alleged Eyewonder-stock fraud is a part of the overall scheme to defraud as Barnett asserts. The Court concludes that this type of determination is better suited for a summary-judgment motion because it necessarily involves an inquiry into the parties' motives and other related facts.

E.  Counts XXVII and XXVIII: Civil RICO Claims (Barnett against Blane) (CSpan Financial, LLC against Blane).

Both Barnett and CSpan Financial, LLC have sufficiently asserted a civil RICO claim against Blane.  The Federal Racketeering Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961-1968 (2006) ("RICO Act"), makes it illegal "for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity."  18 U.S.C. § 1962(c) (2006).  To state a claim for a federal civil RICO violation a plaintiff must allege "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity," that resulted in (5) injury to a business or property, and that (6) the injury was caused by the substantive RICO violation.  *Williams v. Mohawk Indus., Inc.*, 465 F.3d 1277, 1282-83 (11th Cir. 2006).

"Racketeering activity," as defined, includes such predicate acts as mail and wire fraud. 18 U.S.C. § 1961(1). "Mail or wire fraud occurs when a person (1) intentionally participates in a scheme to defraud another of money or property and (2) uses the mails or wires in furtherance of that scheme." *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010).  "Civil RICO claims, which are essentially a certain breed of fraud claims, must be pled with an increased level of specificity." *Ambrosia Coal & Const. Co. v. Pages Morales*, 482 F.3d 1309, 1316 (11th Cir.2007).  "To satisfy the Rule 9(b) standard, RICO complaints must allege: (1) the precise statements, documents, or misrepresentations made; (2) the time and place of and person responsible for the statement; (3) the content and manner in which the statements misled the Plaintiffs; and (4) what the Defendants gained by the alleged fraud." *Id.* at 1316-17.  Where the alleged RICO predicate acts consist of mail and wire fraud, a plaintiff must allege with particularity the contents of the communications, who was involved, where and when they took place, and explain why and how they were fraudulent.  *Cf. Am. Dental Ass'n*, 605 F.3d at 1291.

Barnett has alleged that beginning in 2004 Blane convinced him to invest millions of dollars into both the Worldspan Marine Scheme, and the Capital Span Scheme.  (*See generally* Am. Compl. ¶¶ 9-35, 288-300.)  Specifically, Barnett alleges that Blane stole money that was designated to be invested in Worldspan Marine and the CSpan Entities by depositing some of the money in Blane's wife's bank account and also by fraudulently crediting the money that was invested as investments from Blane and not Barnett. (*Id.* ¶¶ 22, 293 & 296.)  Barnett also alleges that Blane's false promises to invest matching dollars in the various schemes were a part of the

RICO enterprise. (*Id.* ¶¶ 18-19, 24, 33-35.) CSpan alleges that it was injured in a similar manner. (*Id.* ¶ 307-314.)

The Amended Complaint adequately sets forth with sufficient precision the allegedly fraudulent actions and misrepresentations made by Blane. (*Id.* ¶¶ 13-35, 297-98.) The Amended Complaint plainly asserts Barnett's theory of how Blane's statements and actions were fraudulent and misleading. The pleading adequately asserts how Blane benefited from the purported RICO enterprise. (*See id.*) Finally, unlike Barnett's initial complaint, the amended pleading asserts the RICO claims' predicate acts with sufficient detail. (*Id.* ¶¶ 292-98, 313.) Accordingly, the RICO claims will may proceed.

### IV. Conclusion

For the reasons explained above, it is **ORDERED and ADJUDGED** as follows:

1. Blane's Motion to Dismiss (ECF No. 74) is **GRANTED in part and DENIED** in part. Counts XXI, XXII and XXIII are dismissed without prejudice. Counts XXVII, XXVIII, and XXIX remain.
2. Defendant Hans Vogel's Motion to Dismiss (ECF No. 75), which sought dismissal over state law claims assuming that all federal claims would be dismissed in Blane's Motion to Dismiss, is **DENIED** since some federal claims remain.

**DONE and ORDERED** in chambers, at Miami, Florida, on March 13, 2013.

_____
ROBERT N. SCOLA, JR.
UNITED STATES DISTRICT JUDGE